IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALEXANDER MILNE**<br>1181 Belanger Avenue<br>Ottawa, Ontario K1H 187<br><br>        Plaintiff,<br><br>v.<br><br>**PROJECT PRIMUS, INC.**<br>16192 Coastal Highway<br>Lewes, Delaware 19958<br><br>**EZZEDEEN M. SOLEIMAN**<br>242 West 53rd Street<br>New York, New York 10019<br><br>**RAMI M. SHUBBAK**<br>465 Brickell Avenue, Apartment 1602<br>Miami, Florida 33131<br><br>        Defendants. | **COMPLAINT AND<br>JURY DEMAND**<br><br>Case No. 1:25-cv-1113 |

Plaintiff Alexander Milne ("Milne"), by his attorneys, Dickinson Wright PLLC, alleges:

### Introduction

1.   Defendants Ezzedeen M. Soleiman ("Soleiman") and Rami M. Shubbak ("Shubbak"), through Defendant Project Primus, Inc. ("Project Primus"), fraudulently induced Milne to invest $1,250,000.00 in Project Primus's legacy wealth training program purportedly designed to teach the heirs of ultra-high net worth individuals how to manage and invest their families' fortunes.  Soleiman, Shubbak and Project Primus are hereinafter collectively referred to as the "Defendants."

2.   After fraudulently obtaining Milne's money, Soleiman and Shubbak unlawfully diverted those funds to pay for personal goods and services, not Project Primus's business operations and stated goals, in breach of their fiduciary duties and other obligations.

3. Milne institutes this action to: (a) recover the $1,250,000.00 that was fraudulently taken from him along with interest; (b) impose punitive damages on the Defendants for their intentional and criminal conduct; and (c) recover attorneys' fees, expenses, and all other damages suffered as a result of the Defendants' unlawful conduct.

**Parties**

4. Milne is a natural person residing in Ottawa, Canada.

5. Project Primus is a domestic business corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York.

6. Soleiman is a natural person residing at 242 West 53rd Street, New York, New York 10019. Soleiman was Project Primus's co-founder and co-managing partner.

7. Shubbak is a natural person residing at 465 Brickell Avenue, Apartment 1602, Miami, Florida 33131. Shubbak was Project Primus's co-founder and co-managing partner.

8. Soleiman and Shubbak controlled Project Primus by virtue of their positions at Project Primus and their authority over Project Primus's operations, and were therefore each a "controlling person" for the acts of Project Primus under Section 20(a) of the Securities and Exchange Act of 1934.

**Jurisdiction**

9. This Court has federal question jurisdiction pursuant to Section 27 of the Securities and Exchange Act (15 U.S.C. § 78aa(a)) and 28 U.S.C. § 1331.

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

11. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this District pursuant to Section 27 of the Securities and Exchange Act (15 USCS § 78aa(a)) and 28 U.S.C. § 1391.

**Facts**

13. Milne was first introduced to Soleiman in or about 2020, when Soleiman worked at an advisory firm that assisted individuals in obtaining citizenship in foreign countries through state sponsored investment programs similar to the EB-5 program in the United States. At the time, Milne was seeking citizenship in a European country and Soleiman assisted Milne in that process.

14. During the next three years, Milne spoke to Soleiman often, although they never met in-person.

15. In or about November 2023, Soleiman emailed Milne information about Project Primus's legacy wealth training program. Soleiman also introduced Milne to Shubbak by telephone.

16. The Defendants had many phone conversations with Milne in November 2023, as part of their efforts to convince Milne to invest a substantial amount of money in Project Primus.

17. During those calls, the Defendants stated that: (a) Soleiman would be primarily responsible for finding and enrolling the heirs of ultra-high net worth individuals in Project Primus's legacy wealth training program; and (b) Shubbak would be primarily responsible for conducting Project Primus's legacy wealth training program.

18. In selling their concept to Milne, the Defendants focused on Soleiman's supposed robust network of ultra-high net worth individuals he developed through the advisory firm where he previously worked and elsewhere.

19. In truth, however, Soleiman did not have the ability or intent to enroll the heirs of ultra-high net worth individuals in the program, and Shubbak had no intention of truly educating any enrollees if any students ever enrolled in the program.

20. Rather, both Soleiman and Shubbak intended to fraudulently take Milne's money and divert it to pay for their own personal goods and services, as proved to be the case during the course of the ensuing year.

21. In support of their false and fraudulent scheme, the Defendants provided Milne several documents in November 2023 that purported to explain Project Primus's legacy wealth training program. For example, the Defendants provided Milne a slide deck that described the program as follows:

> A significant wealth transfer is on the horizon as part of legacy planning. As the baby boomer generation ages, a substantial amount of assets and resources are expected to be passed down to younger generations. This phenomenon presents both opportunities and challenges, requiring careful consideration in estate and financial planning. This is not the first time such a transfer takes place, but the largest in human history. Today's wealth holders are empowered and enabled with multiple sources to aid their successors in growing their legacy. Project Primus was founded when families seeking to preserve their legacies recognized the need for a solution to mentor the next generation of stewards in an ever-evolving and challenging world.

Project Primus's 2023 Slide Deck A at 3. A copy of Slide Deck A is attached hereto as Exhibit 1.

22. The Defendants also claimed that the heirs of ultra-high net worth individuals were going to pay a $60,000.00 annual fee to enroll in the program plus provide a $1 million investment in Project Primus that would be used to invest in start-up projects that the enrollees would help manage.

4

23. Soleiman described these fees and revenues to a Crain Currency reporter as follows:

> Project Primus hosts two groups per year, with its first cohort consisting of eight members. Individuals who apply to join go through an interview process. Accepted applicants pay a $60,000 annual fee and must meet a $1 million investment requirement to participate in the stage that follows the 12-month learning program.

Crain Currency, *Project Primus builds leadership community for heirs to family fortunes*, May 20, 2024. A copy of the Crain Currency article is attached hereto as Exhibit 2; *see also* Wall Street Journal, *Project Primus Looks to Teach Family Scions How to Invest*, April 25, 2024. A copy of the Wall Street Journal article is attached hereto as Exhibit 3.

24. The Defendants further claimed in the documentation sent to Milne that Project Primus's program would have the following three phases:

**[Phase 1:] Members Join a Cohort**

- Cohort with X members (i.e. beneficiaries) at a time
- Weekly virtual workshops, masterclasses, and customized one-on-one coaching
- Quarterly in-person residencies for 7 days

**[Phase 2:] Members Learn in the Lab**

- Lab exists for simulating real-world scenarios
- Member learns how to think and act on a board
- Member learns how to think entrepreneurially
- Member observes deal flow and practices diligence

**[Phase 3:] Members Practice In-Studio**

- After essential education and training is complete, members begin to assess new investments they want to make using a $1M gift from their parents
- Our in-house Project Primus board actively mentors' members through due diligence

Project Primus 2023 Slide Deck B at 7 (bracketed material added). A copy of Slide Deck B is attached hereto as Exhibit 4.

25. The Defendants further claimed that their program aimed to "deliver outsized financial returns" for investors such as Milne, claiming an expected 3.5 times multiple on invested capital ("MOIC").  *See* Exhibit 4, Project Primus 2023 Slide Deck B at 9.

26. The Defendants' further claimed the following 5-year projected revenues for Project Primus:

   2024:  $2.38 million
   2025:  $5.78 million
   2026:  $8.18 million
   2027:  $9.93 million
   2028:  $11.78 million

*Id.* at 14.

27. The Defendants further predicted that the heirs of ultra-high net worth individuals who enrolled in the legacy wealth training program would pay the following amounts in fees over 5 years:

   2024:  $35 million
   2025:  $75 million
   2026:  $115 million
   2027:  $155 million
   2028:  $195 million

*Id.*

28. The Defendants further claimed that the money invested into the program by people like Milne would be used to "develop and launch a high-quality, life-changing program and experience." *Id.* at 16.

29. The Defendants further claimed that Project Primus's first cohort of students was scheduled to enroll in early 2024.

30. The Defendants' oral and written representations to Milne were false and misleading in numerous material respects.

31. Based upon the Defendants' false and misleading information, on or about November 15, 2023, Milne made an initial $1 million investment in Project Primus by wiring funds to Project Primus's Chase bank account located at 270 Park Avenue, 43rd Floor, New York, New York.

32. Through this investment, Milne became the sole financier for Project Primus and remained the sole source of money for the program throughout the company's existence.

33. However, contrary to the Defendants' repeated statements and assurances, during the first two months of 2024, it became apparent that the Defendants did not have any students lined up to enroll in the program or any prospects of enrolling students in the immediate future.

34. Based upon these failures, the Defendants delayed the program's launch to spring 2024.

35. On or about January 9, 2024, the Defendants filed Form D with the Securities and Exchange Commission ("SEC"), providing notice of Project Primus's exempt offering of securities. A copy of Project Primus's SEC Form D is attached hereto as Exhibit 5.

36. By spring 2024, the Defendants still failed to enroll a single student in the program and it became apparent that the Defendants had lied to Milne since November 2023 about their ability to enroll students in the program.

37. Meanwhile, Soleiman attempted to cover up his lies by providing the following false information to the Wall Street Journal:

> A typical Project Primus family has at least $100 million in assets, usually built by the generation administering the money or the previous one, said Soleiman, adding that **current students range from about 26 to 31 years of age**.

\*         \*         \*

> **Many of the company's clients** made their fortunes in technology, Soleiman said, while others built their wealth in finance, real estate, and in at least one case, entertainment.
>
> \*      \*      \*
>
> **Currently, Project Primus is only working with U.S. and Canadian families**, though others in Asia, Latin America and the Middle East have expressed interest . . . .

Exhibit 3, Wall Street Journal, April 25, 2024 at 3-5 (emphasis added).

38. In truth, Project Primus had no students or clients, making Soleiman's statements to the Wall Street Journal false.

39. Having failed to produce any students for the program by spring 2024, the Defendants told Milne that they planned to switch strategies by focusing on building relationships with wealth management companies, which would supposedly lead to introducing the Defendants to ultra-high net worth families.

40. However, during the ensuing months, the Defendants failed to make any significant connections with wealth management companies and failed to enroll a single student in the program.

41. By summer 2024, Milne began questioning the Defendants' use of the money Milne invested.

42. Project Primus's staff asked the Defendants for receipts for the exorbitant spending that was taking place, but the Defendants failed to produce any receipts.

43. The Defendants' spending was outrageous covering extensive travel, high-end restaurants, and many other luxuries, including paying rent for an apartment in Manhattan that was purportedly being used to host events for ultra-high net worth individuals for the purpose of creating relationships, which would supposedly lead to enrollees. A partial list of the personal

goods and services that the Defendants purchased using Milne's financing is attached hereto as Exhibit 6.

44.     In truth, the money the Defendants spent was for their own personal goods and services, not Project Primus's objectives or stated goals, in direct breach of their fiduciary duties and other obligations.

45.     By fall 2024, the Defendants convinced Milne to invest an additional $250,000.00 in Project Primus to pay the enrollment fees for the project's first cohort of students, among other supposed Project Primus expenses.

46.     The Defendants theorized that enrolling a group of students for free would act as a "loss leader," whereby the Defendants could video the program at-work and use the video and related material to market the program to additional enrollees.

47.     On or about October 1, 2024, Milne wired the additional $250,000.00 to the Defendants' Chase bank account located at 1 Wall Street, New York, New York.

48.     When making the additional investment, Milne demanded that Shubbak agree to the following conditions before moving forward: (a) removing Soleiman from Project Primus's payroll; and (b) preventing Soleiman from having access to Milne's funds. Shubbak agreed.

49.     On or about October 10, 2024, the first group of 15 people enrolled in the program for free.

50.     During the ensuing days, Shubbak purportedly trained the enrollees and engaged in one-on-one discussions with the enrollees. These sessions were recorded for training purposes.

51.     However, after reviewing the recorded sessions, it became apparent to Milne and the other staff at Project Primus that Shubbak had no intention of training the students on how to manage and invest the wealth they stood to inherit in the future.

52. Rather, Shubbak spent the training sessions trying to ingratiate himself into the students' lives and family businesses to develop business relationships that were designed to benefit him personally, not Project Primus.

53. Shubbak also became extremely combative with Project Primus staff and was no longer able to work in the best interests of the program.

54. Milne also learned that Shubbak lied to him about removing Soleiman from Project Primus's payroll and cutting Soleiman off from access to Milne's funds because Soleiman was still using Project Primus's funds to pay for his own personal goods and services.

55. Shubbak's misconduct and additional lies were the final straws.

56. Milne and Project Primus's staff informed the students who had enrolled in the program for free that the program was being disbanded. Project Primus shut down soon thereafter.

57. Milne institutes this action to recover the $1,250,000.00 that was fraudulently taken from him and improperly diverted along with interest, punitive damages, and all other costs, attorneys' fees, expenses, and damages that he has suffered.

**FIRST CAUSE OF ACTION**
**(Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5)**

58. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

59. Defendants, directly or indirectly, by the use of means or instrumentality of interstate commerce or of the mails, used or employed, in connection with the purchase or sale of securities, manipulative or deceptive devices or contrivances in contravention of the rules and regulations prescribed by the SEC, including Rule 10b-5 (17 C.F.R. § 240.10b-5).

60. Defendants, directly or indirectly, in connection with the purchase or sale of securities, used or employed a device, scheme, or artifice to defraud.

61. Defendants, directly or indirectly, in connection with the purchase or sale of securities, made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading.

62. Defendants, directly or indirectly, in connection with the purchase or sale of securities, engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Milne in connection with the purchase or sale of securities.

63. As previously described, Defendants made material misrepresentations, material misstatements, and omitted material facts related to the sale of securities in order to induce Milne to invest in Project Primus, and to keep the fraudulent scheme going, which included the following false material representations, among others:

    a. The Defendants had the ability to enroll the heirs of ultra-high net worth individuals in Project Primus;

    b. The Defendants had the intent to enroll the heirs of ultra-high net worth individuals in Project Primus;

    c. The Defendants intended to use the money Milne invested in Project Primus to further the objectives and stated goals of Project Primus's legacy wealth training program;

    d. The Defendants did, in fact, use the money Milne invested in Project Primus to further the objectives and stated goals of Project Primus's legacy wealth training program;

    e. The Defendants did not use the money Milne invested in Project Primus to pay for their own personal goods and services;

    f. The Defendants intended to train enrollees on how to manage and invest their families wealth;

  g. The Defendants did, in fact, train Project Primus's only cohort–which was enrolled for free–on how to manage and invest their families wealth; and

  h. Defendant Soleiman was cut off from Project Primus's payroll and funding in fall 2024.

  64. Defendants had actual knowledge of the falsity of the aforementioned representations and omissions of material fact, reasonably should have known the falsity of the aforementioned representations and omissions of material fact, or acted with reckless disregard for the truth of the aforementioned false representations and omissions of material fact.

  65. Milne justifiably relied on Defendants aforementioned misrepresentations and omissions of material fact in determining to invest in Project Primus, and Milne would not have invested in Project Primus had he known the truth.

  66. By reason of the foregoing, Defendants committed unlawful fraudulent conduct in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5).

  67. As a direct and proximate result of Defendants' unlawful conduct, Milne has suffered substantial monetary damages.

  68. By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused by their violations of Section 10(b) of the Exchange Act and Rule 10b-5 in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## SECOND CAUSE OF ACTION
### (Sections 20(a) of the Exchange Act Against Defendants Soleiman and Shubbak)

69. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

70. At all times mentioned, Defendants Soleiman and Shubbak controlled Project Primus by virtue of their positions at Project Primus.

71. By reason of their positions at Project Primus, Defendants Soleiman and Shubbak had authority over Project Primus's operations, participated in the day-to-day management of Project Primus, and made strategic decisions for Project Primus.

72. As such, Defendants Soleiman and Shubbak were each a "controlling person" for the acts of Project Primus—the controlled person— pursuant to Section 20(a) of the Securities and Exchange Act.

73. In addition, as discussed above, Defendants Soleiman and Shubbak were culpable participants in the aforementioned fraud and securities violations.

74. By reason of the foregoing, Defendants Soleiman and Shubbak violated Section 20(a) of the Exchange Act (15 U.SC. § 78t).

75. By reason of the foregoing, Defendants Soleiman and Shubbak are individually jointly and severally liable to the same extent as Project Primus for violations of the Exchange Act.

76. As a direct and proximate result of Defendants' unlawful conduct, Milne has suffered substantial monetary damages.

77. By reason therefor, Milne seeks a judgment against Defendants Soleiman and Shubbak, jointly and severally, in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duties)

78. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

79. A fiduciary relationship existed between Milne and Defendants arising out of Defendants' aforementioned conduct, acts, and representations.

80. In particular, a fiduciary duty existed between Milne and Defendants based on Defendants' representations, statements, and materials touting Project Primus's unique, special, and superior expertise and knowledge regarding finance, investments, securities, compliance, and legacy wealth training program; Defendants' affirmative recommendations and advice that Milne should invest in Project Primus.

81. Pursuant to Defendants' aforementioned conduct, a special relationship of trust and confidence existed between the parties that created a fiduciary relationship and caused Milne to justifiably rely on Defendants representations, advice, and recommendations.

82. Defendants were aware and knew that Milne would rely on Defendants' representations, advice, and recommendations related to Project Primus's legacy wealth training program.

83. Defendants breached their fiduciary duties to Milne, including the duty to communicate honestly; the duty to use Milne's funds to further the business and operations of Project Primus; the duty to only recommend a security upon an adequate and reasonable basis; the duty to disclose facts related to the investment that Defendants knew or could have ascertained; and, if essential information about a security was not available, the duty to disclose the unavailability of such information and identify the risks associated with the absence of such information.

84. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Milne has suffered substantial monetary damages.

85. By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused by their breaches in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

**FOURTH CAUSE OF ACTION**
**(Negligent Misrepresentation)**

86. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

87. Pursuant to the above-described special relationship between Milne and Defendants, Defendants had a duty to speak with care and impart correct information to Milne regarding Project Primus's business, operations and use of funds.

88. Defendants provided Milne with incorrect and untruthful information relating to the Project Primus's business, operations and use of funds.

89. Defendants were aware and knew that Milne would rely on Defendants' representations, advice, and recommendations related to Project Primus's legacy wealth training program.

90. Milne reasonably and justifiably relied on the incorrect and untruthful information and advice that Defendants provided relating to Project Primus's legacy wealth training program.

91. As a direct and proximate result of Defendants' negligent misrepresentations, Milne has suffered substantial monetary damages.

92. By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused their breaches in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## FIFTH CAUSE OF ACTION
### (Negligence)

93. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

94. Pursuant to the above-described relationship between Milne and Defendants, Defendants owed Milne a duty to exercise reasonable care when providing investment advice and recommendations that included a duty to truthfully state how Milne's funds were going to be used and were used.

95. Defendants' breached their duties of care to Milne.

96. As a direct and proximate result of Defendants breaches of their duties, Milne has suffered substantial monetary damages.

97. By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused their breaches in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## SIXTH CAUSE OF ACTION
### (Fraud/Fraudulent Misrepresentation/Fraudulent Inducement)

98. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

99. Pursuant to the previously described conduct, Defendants made knowingly false statements of material fact to Milne, and knowingly concealed and omitted material facts from Milne, related to Project Primus's business, operations, and use of funds.

100. Pursuant to the previously described conduct, Defendants' knowing false statements and omissions of material facts were made with the intent and purpose of inducing Milne to invest in Project Primus's legacy wealth training program.

101. Milne justifiably relied on Defendants' knowing misrepresentations and omissions of material facts in determining to invest in Project Primus's legacy wealth training program, and Milne would not have invested in the legacy wealth training program had he known the truth.

102. As a direct and proximate result of Defendants' fraud, Milne has suffered substantial monetary damages.

103. By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused by their fraud in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs, plus punitive damages due to Defendants' fraudulent and criminal conduct.

### SEVENTH CAUSE OF ACTION
**(Unjust Enrichment and Establishment of Constructive Trust)**

104. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

105. Defendants benefited at the expense of Milne by receiving payments and other benefits from convincing Milne to invest in Project Primus's legacy wealth training program.

106. Defendants also benefited at the expense of Milne to the extent Defendants' received returns on Milne's investment.

107. Equity and good conscience require restitution/compensation for the benefits that Defendants received at Milne's expense.

108. By reason therefor, Milne seeks judgment against Defendants, jointly and severally, for all damages caused by Defendants' unjust enrichment, plus interest and costs.

109. Milne is also entitled to, and seeks, the establishment of a constructive trust impressed on the benefits to Defendants and inequitable conduct.

## EIGHTH CAUSE OF ACTION
### (Accounting)

110. Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

111. By virtue of the relationships, false representations, criminal conduct, and investments discussed above, Milne is entitled to a full accounting of all funds that Milne invested in Project Primus.

WHEREFORE, Milne demands judgment as follows:

1. Awarding damages in an amount to be proven at trial, but not less than $1,250,000.00, plus interest;

2. Declaring that Defendants have been unjustly enriched and an awarding of damages in an amount of Defendants' unjust enrichment to be proven at trial, plus interest, and imposing a constructive trust to recoup Defendants' unjust benefits and other assets for the benefit of Milne;

3. A full accounting of the funds Milne invested in Project Primus;

4. Awarding punitive damages arising from Defendants' fraudulent and criminal conduct;

5. Awarding Milne his costs and expenses related to this action, including reasonable attorneys' fees and other legal fees and costs; and such other and further relief as the court finds just and proper.

## JURY DEMAND

Milne demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  February 7, 2025.                    DICKINSON WRIGHT PLLC

By: */s/ Seth Waxman*
Seth B. Waxman (NY Bar # 4324638)
DICKINSON WRIGHT PLLC
1825 I Street N.W. Suite 900
Washington, DC 20006
(202) 466-5956
swaxman@dickinson-wright.com

*Attorneys for Alexander Milne*