## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ALEXANDER MILNE**<br>1181 Belanger Avenue<br>Ottawa, Ontario K1H 187<br><br>Plaintiff,<br><br>v.<br><br>**PROJECT PRIMUS, INC.**<br>16192 Coastal Highway<br>Lewes, Delaware 19958<br><br>**EZZEDEEN M. SOLEIMAN**<br>242 West 53rd Street<br>New York, New York 10019<br><br>**RAMI M. SHUBBAK**<br>465 Brickell Avenue,<br>Apartment 1602<br>Miami, Florida 33131<br><br>Defendants. | **FIRST AMENDED COMPLAINT AND JURY DEMAND**<br><br><br>**Case No. 1:25-cv-1113** |

Plaintiff Alexander Milne ("Milne"), by his attorneys, Mitchell Sandler PLLC, alleges:

### Introduction

1.     Defendants Ezzedeen M. Soleiman ("Soleiman") and Rami M. Shubbak ("Shubbak"), through Defendant Project Primus, Inc. ("Project Primus"), fraudulently induced Milne to invest $1,250,000.00 in Project Primus's legacy wealth training program purportedly designed to teach the heirs of ultra-high net worth individuals how to manage and invest their families' fortunes.  Soleiman, Shubbak, and Project Primus are hereinafter collectively referred to as the "Defendants."

2.      After fraudulently obtaining Milne's money, Soleiman and Shubbak unlawfully diverted those funds to pay for personal goods and services, not Project Primus's business operations and stated goals, in breach of their fiduciary duties and other obligations.

3.      Milne institutes this action to:  (a) recover the $1,250,000.00 that was fraudulently taken from him along with interest; (b) impose punitive damages on the Defendants for their intentional and criminal conduct; and (c) recover attorneys' fees, expenses, and all other damages suffered as a result of the Defendants' unlawful conduct.

**Parties**

4.      Milne is a natural person residing in Ottawa, Canada.

5.      Project Primus is a domestic business corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York.

6.      Soleiman is a natural person residing at 242 West 53rd Street, New York, New York 10019.  Soleiman was Project Primus's co-founder and co-managing partner.

7.      Shubbak is a natural person residing at 465 Brickell Avenue, Apartment 1602, Miami, Florida 33131.  Shubbak was Project Primus's co-founder and co-managing partner.

8.      Soleiman and Shubbak controlled Project Primus by virtue of their positions at Project Primus and their authority over Project Primus's operations, and were therefore each a "controlling person" for the acts of Project Primus under Section 20(a) of the Securities and Exchange Act of 1934.

**Jurisdiction**

9.      This Court has federal question jurisdiction pursuant to Section 27 of the Securities and Exchange Act (15 U.S.C. § 78aa(a)) and 28 U.S.C. § 1331.

10.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).   The amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

11.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this District pursuant to Section 27 of the Securities and Exchange Act (15 USCS § 78aa(a)) and 28 U.S.C. § 1391.

**Facts**

13.     Milne was first introduced to Soleiman in or about 2020, when Soleiman worked at an advisory firm that assisted individuals in obtaining citizenship in foreign countries through state sponsored investment programs similar to the EB-5 program in the United States.   At the time, Milne was seeking citizenship in a European country and Soleiman assisted Milne in that process.

14.     During the next three years, Milne spoke to Soleiman often, although they never met in-person.

15.     Beginning in or about October 2023, and continuing through until November 15, 2023, Soleiman solicited a $1 million investment from Milne through false and misleading representations.

16.     Specifically, on October 8, 2023, Soleiman sent Milne an email falsely claiming, among other things, that he created a business that would introduce the heirs of high net-worth individuals to cutting-edge businesses, instill life values and family responsibility in the enrollees, and develop the enrollees' entrepreneurship and business acumen.   Soleiman's false email stated in full:

> I hope this message finds you well.   I've spent the last several months working on Project Primus, a distinctive venture that

> addresses the challenges faced by families in preserving their life's
> work and wealth for the rising leaders of the next generation.
>
> I've partnered with seasoned experts from Softbank, Google, and
> family office backgrounds, and we've crafted Primus.  It combines
> a venture studio with a venture capital fund.  Families invest on
> behalf of their heirs, enabling them to actively participate in the
> fund's decision-making process.
>
> These young leaders will be exposed to cutting-edge businesses and
> will contribute to investment choices.  We start by instilling essential
> life values and family responsibilities before delving into
> entrepreneurship and business acumen development.
>
> I'd like to get your feedback on my new venture and discuss different
> opportunities.  Please let me know when it's convenient for you to
> connect.  I am currently in Montreal meeting with members of my
> network,  I'd love to meet you to discuss this further.  Thank you for
> your time, and I look forward to our conversation.

A copy of Soleiman's 10/8/23 email is attached hereto as Exhibit 1.

17.     In truth, and in fact, Soleiman did not have the capability or intention to create or

build the legacy wealth training program he described in the email to Milne thereby fraudulently

inducing Milne to invest in the program.

18.     On October 9, 2023, Soleiman furthered his fraudulent scheme by sending Milne

another email that included a slide deck and financial projections that were also false, misleading,

and designed to induce Milne to invest in Project Primus.  In the body of the email, Soleiman

stated:

> . . . .  Attached are the preliminary deck (we have our team working
> on a better one) and our financial projections.  If you go over the
> Angel sheet, you can expect the following 3 scenarios:
>
> On a $1M investment for 5% equity.
>
> Low     3-5 yrs          $  1,920,000
>
> Mid     4-6 yrs          $  3,840,000

High    5-10 yrs        $   7,200,000

Here's a brief overview based on our financial projections:

Investment Amount:  We are seeking an investment of $1,000,000 from investors in exchange for 5% equity in our company.

Potential Returns on Investment (RoI):

Low Scenario: Within 3-5 years, your investment could potentially yield a return of $1,920,000.

Mid Scenario: In a 4–6-year timeframe, the projected return stands at $3,840,000.

High Scenario: In a more long-term scenario of 5-10 years, the return could escalate to a whopping $7,200,000.

Management Fees: Our fund operates with a minimal management fee of 2.5%, ensuring that a significant portion of the profits are channeled back to our investors.

Subscription Fee: $30,000/Student

Fund's Target:  Our fund's target for Fund 1 is set at $20,000,000 per cohort and your investment would play a pivotal role in helping us achieve this goal.  Looking forward to speaking with you soon.

A copy of Soleiman's 10/9/23 email is attached hereto as Exhibit 2.

19.    In truth, and in fact, Soleiman did not have the capability or intention to create a $20,000,000 cohort or provide any of the potential returns on investment he was projecting.  All of these representations were false, misleading, and designed to fraudulently induce Milne to invest in Project Primus.

20.    In the attached slide deck, Soleiman made the following false and misleading statements:

- Project Primus would provide "hands-on learning";

- Shubbak had a "Strong global network of high-net-worth individuals and family offices";

5

- Moaz Hamid was a partner in Project Primus;

- Soleiman had a "Strong network of family offices and working with investors in the USA and EU";

- During the first 1-5 years of Project Primus's business, it would use a "venture studio" to introduce enrollees in the world of business and investing, there would be "deal sourcing with accelerators," and "high quality due diligence of financial model and references";

- During years 2-7 of Project Primus's business, it would "Obtain board seats[,]" "Help companies receive mentorship from industry experts and molding the course[,]" "Build co-investment syndicates," and "Support impact reporting, IP strategy and milestones";

- During years 4-10 of Project Primus's business, it would "Proactively engage with potential acquirers" and introduce the company to "M&A and IPO candidates";

- Fund I of $20 million in investment would be closed by December 1, 2023;

- The "Venture Studio" would be operational by January 2024;

- Fund 2 would be funded by February 2024;

- There would be $100 million in investment by December 2024;

- Investors would reap returns that were 3.5 times the amount invested in the company;

- A "Shark Tank style" monthly pitch process would take place where "5 learned board members" and "1 Senior Investment Observer" listened to enrollees' pitches;

- Enrollees will receive "hands on experience investing in technologies that will change the world";

- The "Venture Studio" will "[f]acilitate the knowledge transfer required for the future generation to excel"; and

- The enrollees will learn "sound investment skills and top tier business acumen."

A copy of the 10/9/23 Slide Deck is attached as Exhibit 3.

21.    The above-described representations in the Slide Deck were false, misleading, and designed to induce Milne to invest in Project Primus.  In truth, and in fact, the Defendants did not have the capability or intention to undertake any of the actions described above.  The business was simply a sham designed to bilk Milne out of his money.

22.    In the days that followed, Soleiman contacted Milne by phone, making many of the same false representations that are set forth in the emails and Slide Deck described above.

23.    On October 13, 2023, Soleiman sent Milne another email in furtherance of his scheme.  Specifically, Soleiman stated:

> I've been reflecting on our mission at Primus and your role in it after our discussion, and I'm thrilled about the collaboration.  We aim to curate a dynamic and diverse environment, focusing not just on capital but on forging meaningful connections with affluent families, each bringing a wealth of professional experiences and unique family dynamics.  Our collective expertise will be crucial in navigating these relationships, ensuring that each member evolves into a responsible steward of their family legacy.  In terms of logistics, our next steps involve legal consultations to draft the necessary stock purchase agreements and financial plans, and what the next 3-9 months look like for us.  How about we schedule a call closer to your return to Canada?

A copy of Soleiman's 10/13/23 email is attached hereto as Exhibit 4.

24.    During the course of the next month, but prior to November 15, 2023, Soleiman and Shubbak engaged in multiple telephone conversations with Milne that were designed to further their scheme to fraudulently induce Milne to invest in Project Primus.  During those calls, the Defendants repeatedly falsely stated that:  (a) Soleiman would find and enroll the heirs of ultra-high net worth individuals in the program; (b) Shubbak would conduct Project Primus's training

program; (c)  Soleiman had a robust network of ultra-high net worth individuals he would be able to bring into the program; (d) the heirs of ultra-high net worth individuals were going to pay a $60,000.00 annual fee to enroll in the program plus provide a $1 million investment in Project Primus that would be used to invest in start-up projects that the enrollees would help manage; (e) the Defendants were in the process of enrolling students in the program; (f) the Defendants were soliciting funds from other investors; (g) the Defendants were taking steps to set up the virtual studio; (h) Milne would make 3.5 times the amount invested in the program; and (i) the Defendants were taking all other steps necessary to effectuate Project Primus's business plans.

25.    In truth, and in fact, the Defendants did not have the capability or intention to carry out any of those promises and representations.  Project Primus was only a business and entity on paper; it was entirely a sham investment vehicle designed to dupe Milne into providing funding so the Defendants could use that money to pay for their own personal goods and services.

26.    In reliance on the Defendants' false and misleading information, on or about November 15, 2023, Milne made an initial $1 million investment in Project Primus by wiring funds to Project Primus's Chase bank account located at 270 Park Avenue, 43rd Floor, New York, New York.

27.    Through that investment, Milne became the sole financier for Project Primus and remained the sole source of money for the program throughout the company's existence.

28.    During the ensuing months, the Defendants continued to make the same types of false and misleading representations to Milne that they made prior to his investment on November 15, 2023, in order to fraudulently induce Milne to remain as an investor in the company and not demand his money back.

29.     However, contrary to the Defendants' repeated statements and assurances, during the first two months of 2024, it became apparent that the Defendants did not have any students lined up to enroll in the program or any prospects of enrolling students in the immediate future. Based upon these failures, the Defendants delayed the program's launch to spring 2024.

30.     On or about January 9, 2024, the Defendants filed Form D with the Securities and Exchange Commission ("SEC"), providing notice of Project Primus's exempt offering of securities.  A copy of Project Primus's SEC Form D is attached hereto as Exhibit 5.

31.     By spring 2024, the Defendants still failed to enroll a single student in the program, and it became apparent that the Defendants had lied to Milne since October 2023 about their ability to enroll students in the program.

32.     Meanwhile, Soleiman attempted to cover up his lies by providing the following false information to the Wall Street Journal:

> A typical Project Primus family has at least $100 million in assets, usually built by the generation administering the money or the previous one, said Soleiman, adding that **current students range from about 26 to 31 years of age**.
>
> *            *            *
>
> **Many of the company's clients** made their fortunes in technology, Soleiman said, while others built their wealth in finance, real estate, and in at least one case, entertainment.
>
> *            *            *
>
> **Currently, Project Primus is only working with U.S. and Canadian families**, though others in Asia, Latin America and the Middle East have expressed interest . . . .

Exhibit 6, Wall Street Journal, *Project Primus Looks to Teach Family Scions How to Invest*, April 25, 2024, at 3-5 (emphasis added).

33.     In truth, Project Primus had no students or clients, making Soleiman's statements to the Wall Street Journal false.

34.     Having failed to produce any students for the program by spring 2024, the Defendants falsely told Milne that they planned to switch strategies by focusing on building relationships with wealth management companies, which would supposedly lead to introducing the Defendants to ultra-high net worth families.

35.     Those representations were again false and misleading.  During the ensuing months, the Defendants failed to make any significant connections with wealth management companies and failed to enroll a single student in the program.

36.     By summer 2024, Milne began questioning the Defendants' use of the money Milne invested.

37.     Project Primus's staff asked the Defendants for receipts for the exorbitant spending that was taking place, but the Defendants failed to produce any receipts.  The Defendants' spending was outrageous, covering extensive travel, high-end restaurants, and many other luxuries, including paying rent for an apartment in Manhattan that was purportedly being used to host events for ultra-high net worth individuals for the purpose of creating relationships, which would supposedly lead to enrollees.  No such events ever took place.   A partial list of the personal goods and services that the Defendants purchased using Milne's financing is attached hereto as Exhibit 7.

38.     In truth, the money the Defendants spent was for their own personal goods and services, not Project Primus's objectives or stated goals, in direct breach of their fiduciary duties and other obligations.

39.     By fall 2024, Shubbak fraudulently induced Milne to invest an additional $250,000.00 in Project Primus by promising that Project Primus was going to turn over a new leaf by offering the program for free to a group of enrollees as a "loss leader" whereby the Defendants could video the program at-work and use the video and related material to market the program to additional enrollees.

40.     In addition, Shubbak stated to Milne that the "loss leader" cohort was going to be properly trained through the program and set up as Project Primus's first graduating class.

41.     Before agreeing to provide the additional funding, Milne required guarantees from Shubbak that Soleiman would be removed from Project Primus's payroll and would not have access to the additional $250,000 Milne invested.

42.     Shubbak agreed to Milne's requirements while, at the same time, never intending to carry out those promises or guarantees, thereby fraudulently inducing Milne to provide the additional funds.

43.     On or about October 1, 2024, Milne wired the additional $250,000.00 to the Defendants' Chase bank account located at 1 Wall Street, New York, New York.

44.     On or about October 10, 2024, the first group of 15 people enrolled in the program for free.

45.     During the ensuing days, Shubbak purportedly trained the enrollees and engaged in one-on-one discussions with the enrollees.  These sessions were recorded for training purposes.

46.     However, after reviewing the recorded sessions, it became apparent to Milne and the other staff at Project Primus that Shubbak had no intention of training the students on how to manage and invest the wealth they stood to inherit in the future.

47.     Rather, Shubbak spent the training sessions trying to ingratiate himself into the students' lives and family businesses to develop business relationships that were designed to benefit him personally, not Project Primus.  Shubbak also became extremely combative with Project Primus's staff.

48.     Milne also learned that Shubbak lied to him about removing Soleiman from Project Primus's payroll and cutting Soleiman off from access to Milne's funds because Soleiman was still using Project Primus's funds to pay for his own personal goods and services.

49.     Shubbak's misconduct and additional lies were the final straws.

50.     Milne and Project Primus's staff informed the students who had enrolled in the program for free that the program was being disbanded.  Project Primus shut down soon thereafter.

51.     Milne institutes this action to recover the $1,250,000.00 that was fraudulently taken from him and improperly diverted along with interest, punitive damages, and all other costs, attorneys' fees, expenses, and damages that he has suffered.

### FIRST CAUSE OF ACTION
### (Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5)

52.     Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

53.     Defendants, directly or indirectly, by the use of means or instrumentality of interstate commerce or of the mails, used or employed, in connection with the purchase or sale of securities, manipulative or deceptive devices or contrivances in contravention of the rules and regulations prescribed by the SEC, including Rule 10b-5 (17 C.F.R. § 240.10b-5).

54.     Defendants, directly or indirectly, in connection with the purchase or sale of securities, used or employed a device, scheme, or artifice to defraud.

55.     Defendants, directly or indirectly, in connection with the purchase or sale of securities, made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading.

56.     Defendants, directly or indirectly, in connection with the purchase or sale of securities, engaged in acts, practices, and a course of business which operated as a fraud and deceit upon Milne in connection with the purchase or sale of securities.

57.     As previously described, Defendants made material misrepresentations, material misstatements, and omitted material facts related to the sale of securities in order to induce Milne to invest in Project Primus, and to keep the fraudulent scheme going, which included the following false material representations, among others:

     a.     The Defendants had the ability to enroll the heirs of ultra-high net worth individuals in Project Primus;

     b.     The Defendants had the intent to enroll the heirs of ultra-high net worth individuals in Project Primus;

     c.     The Defendants intended to use the money Milne invested in Project Primus to further the objectives and stated goals of Project Primus's legacy wealth training program;

     d.     The Defendants did, in fact, use the money Milne invested in Project Primus to further the objectives and stated goals of Project Primus's legacy wealth training program;

     e.     The Defendants did not use the money Milne invested in Project Primus to pay for their own personal goods and services;

f.   The Defendants intended to train enrollees on how to manage and invest their families' wealth;

g.   The Defendants did, in fact, train Project Primus's only cohort–which was enrolled for free–on how to manage and invest their families wealth; and

h.   Defendant Soleiman was cut off from Project Primus's payroll and funding in fall 2024.

58.   Defendants had actual knowledge of the falsity of the aforementioned representations and omissions of material fact, reasonably should have known the falsity of the aforementioned representations and omissions of material fact, or acted with reckless disregard for the truth of the aforementioned false representations and omissions of material fact.

59.   Milne justifiably relied on Defendants aforementioned misrepresentations and omissions of material fact in determining to invest in Project Primus, and Milne would not have invested in Project Primus had he known the truth.

60.   By reason of the foregoing, Defendants committed unlawful fraudulent conduct in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5).

61.   As a direct and proximate result of Defendants' unlawful conduct, Milne has suffered substantial monetary damages.

62.   By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused by their violations of Section 10(b) of the Exchange Act and Rule 10b-5 in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## SECOND CAUSE OF ACTION
### (Sections 20(a) of the Exchange Act Against Defendants Soleiman and Shubbak)

63.    Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

64.    At all times mentioned, Soleiman and Shubbak controlled Project Primus by virtue of their positions at Project Primus.

65.    By reason of their positions at Project Primus, Soleiman and Shubbak had authority over Project Primus's operations, participated in the day-to-day management of Project Primus, and made strategic decisions for Project Primus.

66.    As such, Soleiman and Shubbak were each a "controlling person" for the acts of Project Primus—the controlled person—pursuant to Section 20(a) of the Securities and Exchange Act.

67.    In addition, as discussed above, Soleiman and Shubbak were culpable participants in the aforementioned fraud and securities violations.

68.    By reason of the foregoing, Soleiman and Shubbak violated Section 20(a) of the Exchange Act (15 U.S.C. § 78t).

69.    By reason of the foregoing, Soleiman and Shubbak are individually jointly and severally liable to the same extent as Project Primus for violations of the Exchange Act.

70.    As a direct and proximate result of Defendants' unlawful conduct, Milne has suffered substantial monetary damages.

71.    By reason therefor, Milne seeks a judgment against Soleiman and Shubbak, jointly and severally, in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duties)

72.     Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

73.     A fiduciary relationship existed between Milne and Defendants arising out of Defendants' aforementioned promotional conduct, acts, and representations.

74.     In particular, a fiduciary duty existed between Milne and Defendants based on Defendants' j promotional representations, statements, and materials touting Project Primus's unique, special, and superior expertise and knowledge regarding finance, investments, securities, compliance, and legacy wealth training program; and Defendants' affirmative recommendations and advice that Milne should invest in Project Primus.

75.     Pursuant to Defendants' aforementioned conduct, a special relationship of trust and confidence existed between the parties that created a fiduciary relationship and caused Milne to justifiably rely on Defendants representations, advice, and recommendations.

76.     Defendants were aware and knew that Milne would rely on Defendants' representations, advice, and recommendations related to Project Primus's legacy wealth training program.

77.     Defendants breached their fiduciary duties to Milne, including the duty to communicate honestly; the duty to use Milne's funds to further the business and operations of Project Primus; the duty to only recommend a security upon an adequate and reasonable basis; the duty to disclose facts related to the investment that Defendants knew or could have ascertained; and, if essential information about a security was not available, the duty to disclose the unavailability of such information and identify the risks associated with the absence of such information.

78.     As a direct and proximate result of Defendants' breaches of their fiduciary duties,

16

Milne has suffered substantial monetary damages.

79.     By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused by their breaches in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

80.     Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

81.     Pursuant to the above-described special relationship between Milne and Defendants, Defendants had a duty to speak with care and impart correct information to Milne regarding Project Primus's business, operations and use of funds.

82.     Defendants provided Milne with incorrect and untruthful information relating to the Project Primus's business, operations and use of funds.

83.     Defendants were aware and knew that Milne would rely on Defendants' representations, advice, and recommendations related to Project Primus's legacy wealth training program.

84.     Milne reasonably and justifiably relied on the incorrect and untruthful information and advice that Defendants provided relating to Project Primus's legacy wealth training program.

85.     As a direct and proximate result of Defendants' negligent misrepresentations, Milne has suffered substantial monetary damages.

86.     By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused their breaches in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

**FIFTH CAUSE OF ACTION**
**(Negligence)**

87.    Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

88.    Pursuant to the above-described relationship between Milne and Defendants, Defendants owed Milne a duty to exercise reasonable care when providing investment advice and recommendations that included a duty to truthfully state how Milne's funds were going to be used and were used.

89.    Defendants breached their duties of care to Milne.

90.    As a direct and proximate result of Defendants breaches of their duties, Milne has suffered substantial monetary damages.

91.    By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused their breaches in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs.

**SIXTH CAUSE OF ACTION**
**(Fraud/Fraudulent Misrepresentation/Fraudulent Inducement)**

92.    Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

93.    Pursuant to the previously described conduct, Defendants made knowingly false statements of material fact to Milne, and knowingly concealed and omitted material facts from Milne, related to Project Primus's business, operations, and use of funds.

94.    Pursuant to the previously described conduct, Defendants' knowing false statements and omissions of material facts were made with the intent and purpose of inducing Milne to invest in Project Primus's legacy wealth training program.

95.    Milne justifiably relied on Defendants' knowing misrepresentations and omissions of material facts in determining to invest in Project Primus's legacy wealth training program, and Milne would not have invested in the legacy wealth training program had he known the truth.

96.    As a direct and proximate result of Defendants' fraud, Milne has suffered substantial monetary damages.

97.    By reason therefor, Milne seeks a judgment against Defendants, jointly and severally, for all damages caused by their fraud in an amount to be proven at trial, but not less than $1,250,000.00, plus interest and costs, plus punitive damages due to Defendants' fraudulent and criminal conduct.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment and Establishment of Constructive Trust)**

98.    Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

99.    Defendants benefited at the expense of Milne by receiving payments and other benefits from convincing Milne to invest in Project Primus's legacy wealth training program.

100.    Defendants also benefited at the expense of Milne to the extent Defendants' received returns on Milne's investment.

101.    Equity and good conscience require restitution/compensation for the benefits that Defendants received at Milne's expense.

102.    By reason therefor, Milne seeks judgment against Defendants, jointly and severally, for all damages caused by Defendants' unjust enrichment, plus interest and costs.

103.    Milne is also entitled to, and seeks, the establishment of a constructive trust impressed on the benefits to Defendants and inequitable conduct.

**EIGHTH CAUSE OF ACTION**
**(Accounting)**

104.    Milne repeats and realleges the foregoing paragraphs as if set forth herein in full.

105.    By virtue of the relationships, false representations, criminal conduct, and investments discussed above, Milne is entitled to a full accounting of all funds that Milne invested in Project Primus.

**NINTH CAUSE OF ACTION**
**(Breach of Implied Contract)**

106.    Milne repeats and realleges the foregoing paragraphs as if set forth in herein in full.

107.    Defendants engaged in communications and conduct that evidenced a mutual understanding and agreement with Milne that Milne would invest funds in exchange for securities.

108.    Based on Defendants' representations and conduct, Milne agreed to provide, and did provide, investment funds in the amount of $1,250,000.00 to Defendants.

109.    In return, Defendants agreed—through their words, actions, and course of dealing—to issue to Milne securities, and to use the investment funds for legitimate business purposes as represented to Milne.

110.    Although no written contract was signed, an agreement was implied-in-fact based on the parties' conduct, communications, and the reasonable expectations created by Defendants' representations and solicitations.

111.    Milne fully performed all obligations under the implied agreement, including transferring the agreed-upon investment funds to Defendants.

112.    Defendants breached the implied contract by, among other things:

      a.    Failing to issue the promised securities;

      b.    Misusing or misappropriating Milne's investment funds;

c.    Failing to disclose material facts regarding the investment;

d.    Failing to comply with the investment terms as represented.

113.    As a direct and proximate result of Defendants' breach of the implied contract, Milne has suffered damages in an amount to be determined at trial, but no less than $1,250,000.00, plus interest.

114.    Milne is also entitled to all other relief available at law or in equity, including but not limited to restitution, rescission, or specific performance.

## TENTH CAUSE OF ACTION
### (Promissory Estoppel)

115.    Milne repeats and realleges the foregoing paragraphs as if set forth in herein in full.

116.    Defendants made clear, definite, and unambiguous promises to Milne that if Milne invested funds in the amount of $1,250,000.00, Defendants would issue securities to Milne, provide ownership rights in Project Primus, and use the funds for legitimate business purposes as described in offering materials or oral representations.

117.    Defendants further represented that Project Primus was legitimate and that Milne would receive expected returns.

118.    Relying on Defendants' promises, Milne reasonably and foreseeably transferred $1,250,000.00 to Defendants for the purpose of acquiring said securities and obtaining the benefits described.

119.    Milne's reliance was reasonable given the representations made by Defendants, the offering materials and/or communications provided, and the course of dealing between the parties.

120.    Defendants knew or should have known that Milne was relying on their promises and representations when Milne transferred the investment funds.

121.    Defendants failed to fulfill their promises to Milne, including but not limited to:

      a.        Failing to issue the promised securities;

      b.        Misrepresenting or concealing material facts;

      c.        Misusing or misappropriating the funds provided by Milne.

122.    As a direct and proximate result of Milne's reasonable and detrimental reliance on Defendants' promises, Milne has suffered damages in an amount to be proven at trial, but no less than $1,250,000.00, plus interest.

123.    Injustice can only be avoided by enforcing the promises made by Defendants or awarding damages to compensate Milne for the loss incurred due to reliance.

WHEREFORE, Milne demands judgment as follows:

1.    Awarding damages in an amount to be proven at trial, but not less than $1,250,000.00, plus interest;

2.    Declaring that Defendants have been unjustly enriched and an awarding of damages in an amount of Defendants' unjust enrichment to be proven at trial, plus interest, and imposing a constructive trust to recoup Defendants' unjust benefits and other assets for the benefit of Milne;

3.    A full accounting of the funds Milne invested in Project Primus;

4.    Awarding punitive damages arising from Defendants' fraudulent and criminal conduct;

5.    Awarding Milne his costs and expenses related to this action, including reasonable attorneys' fees and other legal fees and costs; and such other and further relief as the court finds just and proper.

## JURY DEMAND

Milne demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated:  June 5, 2025                          MITCHELL SANDLER PLLC

                                              By: */s/ Seth Waxman*
                                              Seth B. Waxman (NY Bar # 4324638)
                                              MITCHELL SANDLER PLLC
                                              2020 K Street NW, Suite 760
                                              Washington DC, 20006
                                              swaxman@mitchellsandler.com
                                              (202) 886-5260

                                              *Attorneys for Alexander Milne*